**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| H.G.V.U., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25 CV 10931 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| MICHAEL J. SMITH, LADEON FRANCIS, | ) | |
| KRISTI NOEM, and PAMELA BONDI | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner H.G.V.U.'s ("Petitioner") petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241 and Petitioner's motion to amend/correct the requested injunctive relief.

For the following reasons, the Court grants Petitioner's petition [1] and denies Petitioner's motion to

amend/correct the requested injunctive relief [24] as moot, as Petitioner has been transferred to Clay

County Jail, Indiana, which is within the jurisdiction of the Chicago Immigration Court. Within five

days of this Opinion, Respondents are ordered to either: (1) afford Petitioner a bond hearing before

an Immigration Judge; or (2) release Petitioner from custody, under reasonable conditions of

supervision.

**I.      Background**

A.   Petitioner's Circumstances

Petitioner, a citizen of Ecuador, entered the United States on December 19, 2022 with his

family, after which he "encountered" U.S. Customs and Border Protection officials.  (Pet. for Writ of

Habeas Corpus, Dkt. 22 at *2 ¶ 15.)  On November 1, 2023, Petitioner filed an I-589 Application for

Asylum and Withholding of Removal with U.S. Citizenship and Immigration Services ("USCIS").  (*Id.*

¶ 16.)  On September 9, 2025, Petitioner was taken into custody by U.S. Immigration and Customs

Enforcement ("ICE") officers at a check-in appointment with USCIS at a USCIS field office in

Chicago. (*Id.* ¶ 17.) That same day, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") listing the immigration charges against him and instructing Petitioner to appear before an immigration judge in Detroit, Michigan on September 29, 2025. (Gov't Return to Second Am. Pet. for Habeas Corpus, Dkt. 29, Ex. 1.)

The NTA states that Petitioner is subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being "an alien present in the United States who has not been admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," and 8 U.S.C. § 1182(a)(7)(A)(i)(I) for being "an immigrant who, at the time of application for admission, is not in possession of a valid" travel document or "document of identity and nationality[.]" (*Id.*)

Petitioner was taken into custody at Broadview Processing Center in Broadview, Illinois, and transferred to North Lake Correctional Facility in Baldwin, Michigan on September 14, 2025. (Pet. for Writ of Habeas Corpus, Dkt. 22 ¶¶ 17, 21.)

On September 18, 2025, Petitioner filed a Motion for Bond Determination with the Immigration Court. (*Id.* ¶ 22.) On October 3, 2025, the Immigration Judge in the Detroit Immigration Court denied Petitioner's request for bond on the ground that he lacked jurisdiction to do so.[1] (Dkt. 24 ¶ 7.) The Immigration Judge scheduled a hearing for January 22, 2026 to adjudicate Petitioner's asylum application. (*Id.*)

B. The Instant Petition

Petitioner filed the instant petition on September 10, 2025—at which time he was in custody at the Broadview Processing Center—followed by an amended petition filed on September 24, 2025. (Dkts. 1, 4.) On October 2, 2025, this Court ordered, pursuant to the All Writs Act, 28 U.S.C. § 1651,

---

[1] On September 5, 2025, the Board of Immigration Appeals held in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) that Immigration Judges "lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id.* at 216. To be clear, that decision is not binding on this Court and the interpretation it asserts has been rejected by dozens of federal district courts.

that the Government refrain from removing Petitioner outside the jurisdiction of the United States and/or transferring Petitioner to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin. (Dkt. 21.) As a result, Petitioner was relocated to Clay County, Indiana, which is within the jurisdiction of the Chicago Immigration Court.

The Court held a status hearing on October 3, 2025, during which it entered a briefing schedule on the petition. That same day, Petitioner filed a second amended petition with leave of Court. (*See* Dkts. 22, 23.) In addition to the briefs filed in accordance with this Court's briefing schedule, Petitioner filed a motion to amend/correct the requested injunctive relief. (Dkt. 24.) The Court then held a status hearing on October 17, 2025.

## II.  Discussion

Petitioner claims that his detention violates his right to substantive and procedural due process guaranteed by the Fifth Amendment of the U.S. Constitution, that he is not subject to mandatory detention under the INA, U.S.C. § 1225(b)(2), and that the U.S. Department of Justice's policy changes violate the Administrative Procedure Act, 5 U.S.C. § 553.

As an initial matter, because Petitioner was detained in Broadview, Illinois at the time the instant petition was filed, this Court is assured that it may properly hear the petition, *see Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)), and that Peititoner's subsequent transfer to Michigan, and then to Indiana, does not deprive this Court of jurisdiction to adjudicate this case. *In re Hall*, 988 F.3d 376 (7th Cir. 2021).

### A.  Standing

In opposition to the petition, Respondents argue that all respondents except the warden of the Broadview Processing Center should be dismissed for lack of standing.

Absent extenuating circumstances, the only proper respondent in a habeas case is the detainee's immediate custodian. *Trump*, 604 U.S. at 672; *Rumsfeld*, 542 U.S. at 442. Petitioner is

currently in custody in Clay County, Indiana. Because Brandon Cowley is the warden of Clay County Jail, and thus Petitioner's immediate custodian, Mr. Cowley will be substituted as the respondent in the caption pursuant to Federal Rule of Civil Procedure 25(d).

    B. Jurisdiction

The Court next considers the question of jurisdiction to hear the instant petition. Respondents argue that this Court lacks jurisdiction to hear the petition under 8 U.S.C § 1252(g), 1252(b)(9), and 8 U.S.C. § 1252(a)(2)(B)(ii). The Court disagrees and concludes that it has jurisdiction to hear Petitioner's petition.

    *1. 8 U.S.C. § 1252(b)(9)*

Section 1252(b)(9) provides that the Court of Appeals is the exclusive forum for "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Respondents contend that Petitioner's claims fall within the scope of Section 1252(b)(9) because they "aris[e]" from his deportation proceedings. (Dkt. 30 at *16.)

Here, Petitioner challenges the legality of his detention and the denial of his right to seek bond while his removal case proceeds—neither of which are actions arising from a decision to remove Petitioner from the United States. The Supreme Court has stated that § Section 1252(b)(9) "does not present a jurisdictional bar" where petitioners are "not asking for a review of an order removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Respondents are incorrect that Petitioner challenges "the decision to detain [him] in the first place or to seek removal." (Dkt. 30 at *16 (quoting *Jennings*, 583 U.S. at 294); *see also* Dkt. 32 at *5 ("[Petitioner] is not challenging the underlying removal proceedings in the habeas petition . . .").) Instead, Petitioner claims that he is being unlawfully detained under the

mandatory detention framework of Section 1225(b), as opposed to the discretionary one under 8 U.S.C. §1226(a).

### 2. 8 U.S.C 1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Section 1252(g) "bars district courts from hearing challenges to the method by which the Secretary of Homeland Security chooses to commence removal proceedings (including the decision to detain a foreign national pending removal) and for immigration judges to adjudicate those cases—which includes bond determinations during those proceedings." (*Id.* at *13.)

But Respondents' insistence that Section 1252(g) is applicable in this case is misplaced. Here, Petitioner is not challenging the "commence[ment]" of removal proceedings, the "adjudication" of his case, or the "execut[ion] of removal orders against him. Instead, Petitioner is challenging the purportedly unlawful nature of his detention without a bond hearing. As another court in this district has recently reiterated, the Supreme Court has "rejected as 'implausible'" any claim that § 1252(g) covers "all claims arising from deportation proceedings." *Ochoa Ochoa v. Noem, et. al.*, Case No. 25-cv-10865, Dkt. 20 at *6 (Oct. 16, 2025) (Jennings, J.) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020)). *See also Jennings*, 583 U.S. at 294 (holding that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General"; instead, the Supreme Court "read[s] the language to refer to just those three specific actions themselves."); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'") (emphasis in original).

*3. 8 U.S.C. § 1252(a)(2)(B)(ii)*

Respondents also argue that this Court's jurisdiction in this case is limited by 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) precludes judicial review of "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But Petitioner challenges not a discretionary bond denial by an Immigration Judge under Section 1226(a), rather the "extent of the [Government's] authority under the . . . detention statute[s]," which the Supreme Court has held "is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Like in other cases in this district, Petitioner "has not been permitted such a hearing *because* Respondents maintain that he is mandatorily detained under § 1225 instead." *Ochoa Ochoa*, Case No. 25-cv-10865, Dkt. 20 at *8.

C. Exhaustion and Ripeness

Next, Respondents argue that Petitioner has not exhausted all available administrative remedies because he has not attempted to appeal the denial of bond to the BIA. (Dkt. 30 at *32.) Petitioner responds that there is no statutory requirement for exhaustion of remedies under Section 2241 and that exhaustion would be futile in this case. (Dkt. 32 at *12-13.)

Petitioner and Respondents agree that Congress has not imposed a statutory administrative exhaustion requirement. "[S]ound judicial discretion governs" whether exhaustion should be required. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Exhaustion is inappropriate when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez*, 355 F.3d at 1016 (*quoting Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

Requiring Petitioner to exhaust his remedies by attempting to appeal the denial of bond would be futile. Indeed, if Petitioner were to appeal the decision of the Detroit Immigration Judge, Petitioner would be appealing to the very agency, the BIA, that issued *Matter of Yajure Hurtado*, which stripped the Immigration Court of its jurisdiction to set bond. "There is nothing to indicate the BIA would change its position" "because the BIA has 'predetermined' the statutory issue." *Ochoa Ochoa*, Case No. 25-cv-10865, Dkt. 20 at *4 n.4 (quoting *Gonzalez*, 355 F.3d at 1019 (cleaned up)).

D. Detention Under Section 1226(a) or Section 1225(b)(2)(A)

Petitioner insists that his detention should be analyzed under 8 U.S.C. § 1226(a). Respondents respond that the detention should be analyzed under 8 U.S.C. § 1225(b)(2).

Another court in this district aptly set forth the framework of both statutory provisions:

Section 1226(a) sets out the "default rule" for the discretionary detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Under § 1226(a), immigration authorities may make an initial determination as to detention, but noncitizens may then request a bond hearing before an [Immigration Judge]. 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

By contrast, § 1225 governs the detention of those "seeking admission." An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States," § 1225(a)(1), and "fall[s] into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 288. The second category creates a catchall mandatory detention provision: "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings under § 1229]." 8 U.S.C. § 1225(b)(2)(A). Unlike noncitizens detained under § 1226(a), those detained under § 1225 may only be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

*Ochoa Ochoa*, Case No. 25-cv-10865, Dkt. 20 at *9.

Respondents contend that Section 1225(b)(2)[2] governs Petitioner's detention because he is, consistent with the statutory language, (1) an "applicant for admission" (2) who is seeking admission and (3) is "detained for a proceeding under section 1229a[.]" (Dkt. 30 at *23.) The Court disagrees.

The Court concludes that Petitioner was not "seeking admission" at a port of entry or the border at the time of his arrest; rather, Petitioner was already present in the United States when he was arrested. As Judge Jenkins in *Ochoa Ochoa* stated, "'seeking' implies action and that those who have been present in the country for years are not actively 'seeking admission.'" *Ochoa Ochoa*, Case No. 25-cv-10865, Dkt. 20 at *12 (quoting *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025)). In this case, Petitioner entered the United States in December 2022, was paroled, and filed an asylum application in November 2023. Since entering the United States almost three years ago, Petitioner has been out of custody on his own recognizance. And Petitioner's NTA shows that DHA chose not to designate him as an "arriving alien.," (Dkt. 29, Ex. 1), "which is the language used to define the scope of § 1225(b)(2)(A) in the implementing regulations." *Id.* (citing 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)].")).

And although Respondents argue that "applicant for admission" should be read synonymously with "seeking admission," (Dkt. 30 at *28), courts should be "'reluctant to treat statutory terms as surplusage' in any setting." *Duncan v. Walker*, 533 U.S. 167, 174 (2001)

---

[2] 8 U.S.C. § 1225(b)(2)(A) states: "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Subparagraphs (B) and (C) are irrelevant here.

(quoting *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698 (1995)); *see id.* ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant[.]") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879)). Thus, this Court rejects Respondents' proposed interpretation, deems Petitioner as not having been "seeking admission" at the time of his arrest or at present, and concludes that Section 1225(b)(2)(A)'s mandatory detention provision is inapplicable.

Additionally, the Court notes that Respondents' interpretation of Section 1225 would also render meaningless the Laken Riley Act, 8 U.S.C. 1226(c)(1)(E), enacted in January 2025, which "amends the Immigration and Nationality Act (INA) to provide an additional category of aliens who are subject to mandatory detention." EOIR Policy Memo 25-11, (Jan. 30, 2025), available at https://www.justice.gov/eoir/media/1387731/dl?inline. Under that Act, a foreign national who is inadmissible under Section 1182(a)(6)(A) and "is charged with, is arrested for, is convicted of" certain other enumerated offenses is subject to mandatory detention. (Dkt. 30 at *28; *see also* 8 U.S.C. 1226(c)(1)(E) (listing the following enumerated offenses: "burglary, theft, larceny, shoplifting, [] assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person").) By implication, then, individuals who are inadmissible under Section 1182(a)(6)(A) but have *not* committed any of the Act's enumerated offenses are properly detained under Section 1226(a). Respondents do not address this apparent issue in their response brief.

Further in support of their argument, Respondents cite *Matter of Yajure Hurtado*, a decision issued by the Board of Immigration Appeals ("BIA") on September 5, 2025. There, the BIA reversed course as to its longstanding interpretation of the Immigration and Nationality Act and held that "Immigration Judges lack authority to hear bond requests or to

grant bond to aliens who are present in the United States without admission." 29 I&N Dec. 216 (BIA 2025).

The Court rejects the BIA's interpretation in *Yajure Hurtado* as incorrect as a matter of law, noting that it is neither binding on nor persuasive to this Court. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (agencies have "no special competence" in statutory interpretation and federal courts have an "obligation to independently interpret" statutes). The Court also notes that *Yajure Hurtado* is at odds with "longstanding agency practice of providing § 1226(a) bond hearings to noncitizens . . . who were released on recognizance upon entering the United States, placed in standard removal proceedings, and then redetained." *Ochoa Ochoa*, Case No. 25-cv-10865, Dkt. 20 at *14; *see also See Loper Bright*, 603 U.S. at 386 ("[T]he longstanding 'practice of government—like any other interpretive aid—'can inform [a court's] determination of what the law is'") (citations omitted).

In sum, the Court concludes that Petitioner is not subject to mandatory detention under Section 1225(b)(2) and is instead subject to the discretionary detention provisions of Section 1226(a).

E. Due Process

The Due Process Clause of the Fifth Amendment applies to noncitizens, "whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Government detention in immigration proceedings may violate that Clause unless "in certain special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (cleaned up). Courts apply a three-factor balancing test to determine whether a violation of procedural due process has occurred: (1) the private interest implicated by the government action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

The Court concludes that, under this framework, Petitioner's re-detention without a bond hearing violates procedural due process. Petitioner plainly has a private interest in release from custody; Respondents' action creates a substantial risk of an erroneous deprivation of Petitioner's interest; and the Government's interest (including fiscal and administrative burdens) is minimal here. *See Ochoa Ochoa*, Case No. 25-cv-10865, Dkt. 20 at *20.

## V. Conclusion

For the foregoing reasons, the Court grants Petitioner's petition for writ of habeas corpus [1] and denies Petitioner's motion to amend/correct the requested injunctive relief [24] as moot. Within five days of the issuance of this Opinion, Respondents are ordered to either: (1) afford Petitioner a bond hearing before an Immigration Judge; or (2) release Petitioner from custody, under reasonable conditions of supervision. The Clerk is further ordered to substitute Brandon Crowley, currently Petitioner's immediate custodian, as the respondent and to amend the case name in CM/ECF to reflect this change.

The Court's prior Order stands that, so long as he is in custody, Petitioner is not be removed from the jurisdiction of the United States and shall not be transferred to any judicial district outside the states of Illinois, Wisconsin and Indiana. If, in the event Petitioner is transferred to another facility or other location, Respondent must notify the Court and Petitioner's counsel at least 72 hours prior to the transfer.

**IT IS SO ORDERED.**

_____

Sharon Johnson Coleman
United States District Judge

DATED: 10/20/2025